**E-FILED**
Tuesday, 21 January, 2014  05:13:32 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BETTY McSWEEENY, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR FOR THE ESTATE OF FRANKIE D. PRAY SR., | C.D. Ill. Case No. 4:96-cv-04025-HAB |
| Plaintiff, | (*Remanded from E.D. Pa. Case No. 2:08-cv-91884-ER; MDL No. 875*) |
| v. | Hon. Harold A. Baker |
| A. C. AND S., INC., et al., | |
| Defendants. | |

**DEFENDANT GENERAL ELECTRIC COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF <u>PLAINTIFF'S EXPERT DR. PETER ORRIS</u>**

Defendant General Electric Company ("GE") moves to exclude the testimony of Plaintiff's expert Dr. Peter Orris, because his expert opinions fail to meet the requirements for admissibility under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). GE also requests a pretrial *Daubert* hearing, as exclusion of Mr. Orris' testimony is critical to the legally sound and fair adjudication of this matter. For the reasons that follow, GE's motion should be granted.

**MEMORANDUM OF LAW**

Dr. Peter Orris' specific causation opinions in toxic tort cases have already been excluded by two federal courts. *Korte v. ExxonMobil Coal USA, Inc.*, 164 Fed. App'x 553, 555, 557 (7th Cir. 2006) (affirming exclusion of Dr. Orris' opinion that coal dust caused plaintiffs' injuries as he failed to consider the dose of plaintiffs' claimed exposure and "did not rule out or fully consider the likelihood of other causes for [plaintiffs'] symptoms"); *Adams v. Cooper Indus., Inc.*, No 03-476-JBC, 2008 WL 339714, at *2 (E.D. Ky. Feb. 5, 2008) (excluding Dr. Orris'

opinion that chemical emissions from an industrial plant caused plaintiffs' injuries because he "failed to inquire into the amounts of chemicals to which the plaintiffs were exposed prior to reaching [his] initial specific causation opinions"). Dr. Orris' specific causation opinions in this case — *i.e.*, the decedent's asbestos exposures caused his lung cancer, Orris Report (Ex. B) at 3 — suffer the same methodological flaws that led these federal courts to exclude his opinions. Moreover, Dr. Orris' opinions are neither product nor defendant specific. Orris Dep. (Ex. C) at 71:16-72:18, 85:3-15 (Q: . . . [Y]ou were not asked to determine if any particular product by itself was a substantial factor in his disease, correct? A: Correct). Regarding GE, Dr. Orris admitted he had no idea as to whether the decedent was even exposed to asbestos from any GE products, much less how much any such alleged exposure the decedent had from GE products. *Id.* at 72:4-18, 151:21-152:2.

*First*, Dr. Orris' opinions are the product of an unreliable methodology. Indeed, his report set forth no methodology whatsoever. *See* Orris Report (Ex. B) at 3 (offering a conclusory opinion "[b]ased on th[e] [work] history derived from the materials that [plaintiff's counsel] have furnished"). In the end, the best way he could describe this so-called "methodology" was "the higher the dose, the higher the risk." Orris Dep. (Ex.C) at 130:14-22, 195:15-21 ("the more you're expos[ed] to asbestos, the more likely you are to develop the disease"). In other words, at some undefined point, a risk becomes high enough to be considered a "cause." As such, Dr. Orris' methodology is nothing more than window dressing for an "I know it when I see it" opinion.

Likewise, Dr. Orris made many other assertions — *e.g.*, that the decedent had "moderate" exposures to asbestos, that studies show that millwrights such as the decedent have an increased risk of contracting an asbestos-related disease, that the decedent's lung cancer could have been

2

caused by asbestos even though the decedent did not have an underlying diagnosis of asbestosis — without citing any supporting medical or scientific literature in his expert report, *see* Orris Report (Ex. B) (citing no reliance literature), and without being able to cite any such literature at his deposition, *see* Orris Dep. (Ex. C) at 61:4-19 (unable to cite any articles that he relied on for his causation opinions), 108:5-20 (unable to cite any epidemiological studies on the increased risk of asbestos-related disease associated with the decedent's line of work), 162:13-163:6 (unable to cite any studies supporting his claim that the absence of asbestosis did not matter). Such *ipse dixit* and unsupported assertions are *per se* unreliable under *Daubert*.

Unsurprisingly, Dr. Orris could not demonstrate that his methodology bears any of the hallmarks of reliability required by *Daubert*. Dr. Orris has not published his methodology in a peer reviewed scientific journal, *id.* at 155:17-21; *see also id.* at 44:8-21 (he has done no original research on asbestos), and could cite no professional standards or consensus standards that support his methodology, *id.* at 155:22-158:4. And while he did not know the error rate associated with his methodology, he admitted that it would be akin to a "flip [of] a coin." *Id.* at 154:24-155:16. Because Dr. Orris' methodology is unreliable, his opinions must be excluded.

*Second*, Dr. Orris unreliably applied his own "methodology." Even though hundreds of pages of deposition testimony and medical records exist in this case, Dr. Orris managed to review these materials, draw his conclusions, and write a report, all in the span of four to five hours. Orris Dep. (Ex. C) at 79:11-21. It shows. For example, although Dr. Orris agreed that an expert should consider all potential exposures or causes of a disease before rendering a causation opinion, *see id.* at 112:19-113:5 ; *see also id.* 65:2-66:11, he failed to do so in this case, *id.* at 172:16-175:4 (acknowledging that the decedent was likely exposed to numerous carcinogens other than asbestos over the course of his career — such as machining fluids, solvents, and by-

3

products of a steel mill coke battery — but explaining that he did not consider the potential causative effect of any of those products simply because "I was not asked nor given evidence as to whether or not they contributed"). Thus, even if Dr. Orris' opinions were based on a scientific method, he failed to reasonably apply his methodology to the facts of this case. Accordingly, Dr. Orris' testimony bears none of hallmarks of reliability under *Daubert* and cannot be permitted.

## ARGUMENT

The Supreme Court has made clear that scientific testimony is admissible under Rule 702 only if it is based on "scientific knowledge" that is "derived by the scientific method":

> Proposed testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). In other words, the district court must act as a "gatekeeper" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589.

As the proponent of Dr. Orris' testimony, plaintiff bears the burden of establishing its admissibility. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Accordingly, plaintiff must show that Dr. Orris' testimony: (1) is based upon specialized knowledge that Dr. Orris is qualified to present; (2) is reliable, *i.e.*, based upon sufficient facts or data and is the product of reliable principles and methods; and (3) will assist the jury to understand the evidence or determine a fact in issue. Fed. R. Evid. 702. Even if an expert's methodology in general is acceptable, the expert must demonstrate "the reasonableness" of his application of that methodology in a particular case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153-54 (1999). Plaintiff cannot carry this burden with respect to Dr. Orris.

4

As the admissibility of Dr. Orris' testimony would critically affect the trial, a pretrial hearing should be held to avoid the costly result of needlessly proceeding with trial. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012) ("An erroneous Daubert ruling excluding non-critical expert testimony would result, at worst, in the exclusion of expert testimony that did not matter. Failure to conduct such an analysis when necessary, however, would mean that the unreliable testimony remains in the record, a result that could easily lead to reversal on appeal."); *West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002) (explaining courts must squarely resolve "tough" questions, "if necessary by holding evidentiary hearings and choosing between competing perspectives"); *see also Estate of Barabin v. AstenJohnson, Inc.*, No. 10-36142, slip op. at 13-14 (9th Cir. Jan. 15, 2014) (Ex. D) (finding in an asbestos case that the erroneous admission of unreliable expert testimony was reversible error, and explaining that "[j]ust as the district court cannot abdicate its role as gatekeeper, so too must it avoid delegating that role to the jury").

## I. DR. ORRIS' OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE THE PRODUCT OF AN UNRELIABLE METHODOLOGY.

Under *Daubert*, a court must make "a preliminary assessment of whether the reasoning or methodology underlying the [putative expert's] testimony is scientifically valid." 509 U.S. at 592-93; *accord id.* at 590 (opinions must be grounded in the "methods and procedures of science"). Dr. Orris' opinions must be excluded as his "methodology" fails *Daubert's* reliability considerations.

***Dr. Orris critically failed to consider dose.*** Dr. Orris agreed that "the dose or the exposure is a factor that you evaluate in determining specific causation." Orris Dep. (7/2/12) (Ex. C) at 120:8-15. Yet, he conceded that he could do little more than make assumptions as to what dosage of asbestos fibers Mr. Pray was actually exposed to—much less what dosage came

5

from GE products—or whether such exposure was sufficient to cause Mr. Pray's lung cancer, *e.g., id.* at 133:6-134:7, 145:1-147:17. Dr. Orris assumed, based on little more than an expedited review of Mr. Pray's occupational history and select medical records, that he was likely exposed to some level of asbestos, and that "the higher the dose, the higher the risk" of disease. *Id.* at 130:14-22, 195:15-21 ("the more you're expos[ed] to asbestos, the more likely you are to develop the disease"). And although Dr. Orris opined that Mr. Pray may have been at an increased risk of cancer due to possible exposure to asbestos *generally*, "he did not rely on tests measuring the type and quantity of [the alleged toxin] found" in the *specific product* alleged to have caused the decedents injury. *Korte*, 164 F. App'x at 555 (finding Dr. Orris' testimony was unreliable because he failed to test for or take into account, among other things, the level of exposure to the alleged toxins in defendant's product); *accord.* Orris Dep. (7/2/12) (Ex. C) at 85:11-15 ("Q. Before we get to that, and just again to clarify, you were not asked to determine if any particular product by itself was a substantial factor in his disease, correct? A. Correct.")

The mere fact that a toxin increases the *risk* of injury is not proof that the toxin *caused* an injury. *See* Reference Manual on Scientific Evidence 552, 609 (3d ed. 2011) (explaining that "an association is not equivalent to causation"). This is sheer unscientific advocacy, which by its very nature lacks "the same level of intellectual rigor that characterizes the practice of an expert in the field." *Kumho Tire Co.*, 526 U.S. at 152. Dr. Orris' so-called "methodology" is impermissibly based "less on a scientific understanding of the specifics of [the decedent's] workplace exposure and the potential effects on [the decedent], and more on merely a general understanding of [the toxin], with only unsupported speculation having been used to relate the general knowledge to the facts surrounding [the decedent's] exposure." *Wintz By & Through Wintz v. Northrop Corp.*, 110 F.3d 508, 514 (7th Cir. 1997). Because Dr. Orris failed to conduct

6

or rely on tests measuring the amount of actual exposure required in order to opine "whether the dose to which the plaintiff was exposed is sufficient to cause the disease," his testimony fails *Daubert*'s reliability standards and must be excluded. *Id.* at 513.

***Dr. Orris' methodology cannot be objectively tested.*** In addition, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593; *accord. Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) ("[T]he absence of any testing indicates that [the expert's] proffered opinions cannot fairly be characterized as scientific knowledge. Personal observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert's* most significant guidepost."). Here, Dr. Orris did not describe his methodology in his report, *see* Orris Report (Ex. B) at 3, and it was apparent at his deposition that it simply boils down to a subjective assessment of whether the decedent's exposures to asbestos were "enough" for him to conclude that the asbestos was a cause, Orris Dep. (Ex. C) at 112:19-114:23, 130:14-22, 195:15-21 ("the more you're expos[ed] to asbestos, the more likely you are to develop the disease"). However, "[w]here the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact." *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999).

***Dr. Orris' methodology has not been published in a peer reviewed scientific journal, nor did he cite scientific literature supporting his opinions.*** Likewise, a "pertinent [reliability] consideration is whether the theory or technique has been subjected to peer review and publication." *Daubert*, 509 U.S. at 593. Dr. Orris' methodology fails this test. *First*, Dr. Orris admitted that he has never published his methodology in a peer reviewed scientific journal. Orris Dep. (Ex. C) at 155:17-21. *Second*, Dr. Orris could not point to any literature that set forth his

7

methodology for reaching a specific causation opinion: he cited no reliance materials in his expert report, Orris Report (Ex. B), and he could cite to no particular pieces of literature or professional standards at his deposition, Orris Dep. (Ex. C) at 155:22-158:4.

In particular, Dr. Orris' expert report is woefully incomplete—his report cited no literature or reliance materials whatsoever. *See* Fed. R. Civ. P. 26(a)(2)(B) (expert report "must contain" "a complete statement of all opinions the witness will express and the basis and reasons for them"); Fed. R. Civ. P. 37(c)(1); *Chiriboga v. Nat'l R.R. Passenger Corp.*, No. 08-C-7293, 2011 WL 2295281, at *6 (N.D. Ill. June 9, 2011) (explaining the importance of properly prepared expert reports). This means that Dr. Orris' opinions are based simply on his own say-so. It is well established, however, that an expert's *ipse dixit* alone is not enough to support admissibility. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997); *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("The court is not obligated to admit testimony just because it is given by an expert."). At his deposition, Dr. Orris utterly failed to fill in the omissions in his report. He made numerous assertions, but consistently was unable to provide any scientific support for his claims. For example:

- Dr. Orris was unable to cite any of the articles that he relied on for his causation opinions. Orris Dep. (Ex. C) at 61:4-19

- Dr. Orris asserted that there are "a whole series of studies" demonstrating that people in the decedent's line of work had sufficient asbestos exposures to place them at an increased risk of developing an asbestos-related disease. He could not cite a single such study. *Id.* at 108:5-20.

- The decedent was never diagnosed with asbestosis. Nevertheless, Dr. Orris claimed that the absence of underlying asbestosis did not rule out the possibility

8

of an asbestos-related lung cancer. When asked to provide authority for his opinion that lack of asbestosis did not matter, Dr. Orris again could not cite a single such study. *Id.* at 162:13-163:6.

Dr. Orris' personal assurances that medical literature exists to support his opinions are not enough. *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010) (finding expert testimony was unreliable where the expert's "report merely deemed 'reasonable' his proposed standard, relying solely on his own previous (and similarly unsupported) assessment of the same for support"); *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 538 (7th Cir. 2000) (affirming exclusion of expert's opinion, which "[fell] into the category of subjective belief or unsupported speculation" as "no lab or organization has tested his theories; no other manufacturer incorporates his proposed design; and he has not seen any industry studies"); *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996) (excluding an expert's scientific opinion where expert failed to "read any studies, surveys or analyses" in support of his theory).

***Dr. Orris' methodology has no known error rate.*** In addition, a "court ordinarily should consider the known or potential rate of error." *Daubert*, 509 U.S. at 594. Here, not only did Dr. Orris admit that he did not know the error rate associated with his "methodology," but he conceded that it may be near fifty percent:

> Q: Are you aware of any published error rates on your methodology?
>
> A: No.
>
> Q: For example, there is no study out there that takes a group of people applying the same methodology and determines how often they agree when applying the methodology, whether it's 50 percent accurate or 20 percent accurate or 70 percent accurate?
>
> A: No, because, by definition, in most of these cases, there is an expert witness that disagrees, so you would think there were 50 percent on one side and 50 percent on the other side.

9

> Q: May as well flip a coin?
>
> A: Well, it's the nature of the beast. I think the judges sometimes have a problem with that.

Orris Dep. (Ex. C) at 154:24-155:16. *See West*, 282 F.3d at 939 (expressing skepticism in a model that "has not been verified empirically").

By his own admission, Dr. Orris' methodology carries with it a potentially astronomic error rate. Of course, neither he nor anyone else can definitively identify the error rate because his methodology has never been tested. And therein lies the problem. This is the precise type of *ipse dixit* that *Daubert* and its progeny have sought to eliminate. Plaintiff has utterly failed to demonstrate that Dr. Orris' methodology bears any of the hallmarks of reliability required by *Daubert*. Accordingly, his testimony cannot be allowed.

II. **DR. ORRIS FAILED TO RELIABLY FOLLOW HIS OWN SO-CALLED METHODOLOGY BY CONSIDERING POTENTIAL ALTERNATIVE CAUSES OF THE DECEDENT'S LUNG CANCER**

Even assuming Dr. Orris' "methods" have some indicia of reliability, Dr. Orris violated his own standard of a proper methodology — namely, that an in-depth occupational work history is needed and that all potential exposures should be considered. As discussed *infra*, an expert must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. By his own admission, Dr. Orris has failed to do that. Dr. Orris testified that "a good deal of what" practicing occupational health physicians do is to take "an in-depth occupational history, which is, in fact, most of the time an exposure history." Orris Dep. (Ex. C) 65:2-66:11. However, he made no effort to obtain and evaluate, or even concern himself with the totality of the decedent's exposure history before concluding that asbestos caused the decedent's lung cancer.

10

For example, Dr. Orris acknowledged that the decedent was likely exposed to numerous carcinogens over the course of his career, including those found in machining fluids, solvents, and by-products of a steel mill coke battery. *Id.* at 172:16-175:4; *see also id.* at 37:4-38:8. However, he completely failed to consider any of these potential exposures when forming his opinions. *See* Orris Report (Ex. B) (not listing or discussing any such exposures). Likewise, Dr. Orris concluded that Mr. Pray's lung cancer was caused by some combination of general exposure to asbestos and cigarette smoking, yet failed to further elucidate the potential causative effect of each. *See, e.g.*, Orris Report, (Ex. B) at 3 (it is "likely that [Mr. Pray's] asbestos exposure was a cause of this lung cancer and his subsequent death. Is [sic] earlier cigarette smoking history may have played a role"). Indeed, Dr. Orris revealed his litigation-driven conclusion when he admitted that he failed to consider other potential causes of Mr. Pray's injury because he was not provided with a "history of exposures to these other compounds," even though "[t]he work of a millwright would give him some exposure to these materials," and because Dr. Orris "was not asked nor given evidence as to whether or not they contributed." Orris Dep. (Ex. C) at 174:13-175:4.

By artificially narrowing his inquiry, Dr. Orris "cast aside his scholar's mantel and became a shill for" plaintiff. *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1340 (7th Cir. 1989). The Court should "protect[] the interests of the judicial system" by excluding his made-for-litigation opinion. *Id.* Failure to consider alternatives was one of the reasons that courts have twice excluded his opinion testimony. *Korte*, 164 Fed. App'x at 555, 557 (affirming exclusion of Dr. Orris' opinion that coal dust caused plaintiffs' injuries because Dr. Orris "did not rule out or fully consider the likelihood of other causes for [plaintiffs'] symptoms"); *Adams*, 2008 WL 339714, at *2 (excluding Dr. Orris' opinion that chemical

11

emissions from an industrial plant caused plaintiffs' injuries because Dr. Orris "failed to inquire into the amounts of chemicals to which the plaintiffs were exposed prior to reaching [his] initial specific causation opinions"); *see also, e.g.*, *West*, 282 F.3d at 939 (finding failure to test for and exclude other potential causes " undercut the power of the inference that [the expert] advanced").

Finally, Dr. Orris departed from his own method by failing to cite a single study about asbestos exposures for Mr. Pray's occupation—millwrights. Here, at most, he compared the exposures of Mr. Pray – a millwright who worked with metal products at steel mills and utilities – to those reported by Selikoff—for insulators who worked with insulation in shipyards. His failure to abide by his own method means his opinion should be excluded. *See Kumho Tire Co.*, 526 U.S. at 152.

## CONCLUSION

For the foregoing reasons, GE requests that this Court exclude the opinion testimony of plaintiff's expert Peter Orris. A proposed order is attached hereto as Exhibit E.

Dated: January 21, 2014

Respectfully submitted,

GENERAL ELECTRIC COMPANY

By:  /s/ Michael L. Lisak
     One of Its Attorneys

Timothy E. Kapshandy
Maja C. Eaton
Michael L. Lisak
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000
tkapshandy@sidley.com
meaton@sidley.com
mlisak@sidley.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 21, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Dated:  January 21, 2014

                                                                     */s/ Michael L. Lisak*