IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BETTY McSWEENEY, individually and as special administrator of the estate of Frankie D. Pray, Sr.<br>       Plaintiffs,<br> v.<br>AC&S, INC.., et al.,<br>      Defendants. | Judge Harold A. Baker<br><br>Case No. 96-4025 |

<u>Plaintiff's Reply in Support of Plaintiff's Motion for Sanctions Against General Electric</u>

  Plaintiff replies in support of Plaintiff's Motion for Sanctions for General Electric's Failure to Preserve Contracts for Quad Cities Construction.

  GE's response fails to discuss the reason why plaintiff filed a motion for sanctions. The sanction is sought because GE seeks to rely on the missing contract document - not because plaintiff has been unable to obtain a copy. GE, as evidenced by the testimony of GE's designated witness, Paul Banazewski, wants the jury to believe the contract is needed to prove what GE did or did not do during the construction of the Quad Cities plant. GE's response to the sanctions motion reiterates Banazewski's conclusory testimony about needing the contract and not being able to rely on other evidence - including GE's own written specifications for QC.

  Plaintiff has other evidence to prove GE's role as the company that built the entire QC plant. The sanction is sought as a remedy to limit GE's ability to rely on a document which has disappeared while in GE's custody. GE seeks to use the missing document to argue plaintiff has not proved or cannot prove what GE did during the QC construction. The sanction sought is to

1

limit GE's contention that the case cannot be proven because of a document GE lost or destroyed. The testimony of GE's corporate witness, who has no personal or corporate knowledge of the original construction at QC, is speculative and not subject to effective cross examination about the contents of the document.

Plaintiff's motion for sanctions discusses the available GE specifications for Quad Cities asbestos materials which GE claims are not valid without the contract. Plaintiff will also present testimony proving GE's role in the original construction of Quad Cities Nuclear Plant through several witnesses. One example is the testimony of the Commonwealth Edison Construction Department Head Manager Arthur Kleinrath. (Ex 7 at 84; ex 5 at 14.) Mr. Kleinrath has testified in depositions that:

- QC was a "GE turnkey job." (Ex 7 at 85.)
- "they [GE] were going to furnish the equipment and erect the unit ready for commercial - for a license from the NRC." (Ex 7 at 84-85.)
- GE was responsible at QC for the nuclear steam supply system, piping systems, and the turbine.[1] (Ex. 7 at 85.)
- The engineering specifications, which GE approved as the successful bidder, specified the thermal insulation to be used in powerhouses. (Ex 6 at 10-12.)
- A major power plant with more than one steam unit, such as the QC site, would have about 35 miles of thermally insulated piping. (Ex 6 at 14.)

---

[1] GE hired Sargent and Lundy as engineer and United Engineers as the construction contractor. (Ex 1 at 85.)

- Before 1972, when QC was built, Com Ed used asbestos thermal insulation on piping systems and turbine units. (Ex 6 at 14-15.)

GE should not be permitted to create jury speculation that a missing document might discredit Mr. Kleinrath's testimony based on his personal knowledge.

Tom Crider is another witness for plaintiff about GE's role in the original construction at Quad Cities. Mr. Crider is the former business manager of the Millwrights Local 2158, of which Frankie Pray was a member.[2] Crider will testify:

- During the time QC was being constructed, General Electric ("GE") engineers and representatives were onsite, along with the contractor GE hired to build the facility. (Ex 4 at 10-12.)

- Although the millwrights were employed by the contractor, GE "called the shots" on the project. (Ex 4 at 46.)

- Ninety or a hundred local 2158 millwrights, including Pray, were provided to work on original construction at QC. (Ex 4 at 11, 55.)

Likewise, the testimony of Mr. Crider should not be subjected to challenge based on a missing document.

GE's lawyers should not be able to argue, or utilize a designated witness to testify, that a missing contract is required to prove GE's responsibility for the work and materials at QC. If GE wants to counter testimony of plaintiff's witnesses, who have personal knowledge of the role GE played in the original QC construction, GE should be required to provide the document. The alternative is the sanction sought by plaintiff.

---

[2] Millwrights erect the equipment at powerhouses.

One Year Warranty

GE's lawyers argue in response that assuming a one year turbine warranty means the contracts only needed to be kept for a year. No testimony or document is cited to support such a corporate retention policy. Warranties are at most only a term within a larger contract. The contract as a whole governs later claims that might arise between the parties to the contract for a multimillion dollar turbine that has a life of several decades. The statute of limitations on written agreements in Illinois is 10 years after discovery of a breach. 735 ILCS 5/13-206.

GE's corporate witness denied that any specific retention period was known to him. The corporate witness said retention of contracts at "field offices" was on a "business need basis" and commented the retained contracts could be "40 years old." (GE Response to Motion for Sanctions at pages 4-5.) The corporate witness also commented the contracts were kept in multiple locations besides field offices. (Ex 1 to Plaintiff's Motion at 48.) GE in reply does not establish a corporate retention policy which justifies the inability to locate the document.

GE does not dispute asbestos claims were a known source of potential liability for which retention of the documents would be important. GE's corporate witness's reliance on the contract document is an admission of such importance. The failure to preserve such documents cannot be dismissed so readily.

Alternative Sources

GE argues plaintiff has not pursued alternative sources to find the contract. Since GE's witness is relying on the document, the more important question is why GE has not sought production from alternative sources. Plaintiff has sought production of records for Quad Cities

from Sargent & Lundy, the engineering firm for ComEd, and from ComEd. (Ex 8.) Neither source provided the contract.

**Conclusion**

Plaintiff requests that this court grant Plaintiff's Motion for Sanctions for General Electric's Failure to Preserve Contracts for Quad Cities Construction.


Dated: February 13, 2014


/s/ Robert G. McCoy
Attorney for Plaintiff

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
(312) 944-0600