IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | Civil Action No.  MDL 875 |
| Frankie Pray,<br><br>          Plaintiff,<br><br>v.<br><br>CBS Corporation et al<br><br>          Defendants, | C.D. Ill. Case No. 96-4025<br><br>*Remanded from E.D. Pa. Case No. 08-CV-91884* |

**PLAINTIFF'S RESPONSE TO CBS CORPORATION'S
MOTION FOR SUMMARY JUDGEMENT**

Plaintiff Frankie Pray (Pray) responds to and opposes CBS Corporation's (CBS) motion for summary judgment as follows:

EVIDENCE

I.    *Work History*

Pray was a millwright and a member of union local 2158. (Ex. 1 at ¶6.) Pray spent much of his time as a millwright working turbine shutdowns for maintenance at power plants, including Byron Nuclear Station ("Byron") in Byron, IL. (Ex 4 at 10, 103.) Pray was diagnosed with lung cancer on March 26, 2007. (Ex. 2.)  He died on May 9, 2007. (Ex. 3.)

II.     *Exposure to Westinghouse Turbines*[1]

Robert Crider (Crider) worked with Pray during a shutdown at Byron in 1990 or 1991. (Ex. 4 at 19,117-18.) This shutdown lasted two or three months. (Ex. 4 at 19.) The turbine covers, called "doghouses," were removed, and the components of the high pressure and low pressure ends of the turbines were dismantled and cleaned. (Ex. 4 at 20.) The doghouses covered the generators of the turbines for "sound-deadening" purposes. (Ex. 4 at 20-21.) The interior of the doghouses contained a "spray on" insulation. (Ex. 4 at 21.)

Removing the doghouses would create dust which the millwrights would vacuum up. (Ex. 4 at 22.) They would scrape sound-deadening insulation off the bottom half of the doghouse with a putty knife. (Ex. 4 at 23.) The doghouse would be cleaned and vacuumed, inside and out. (Ex. 4 at 24.) The high pressure ends of the turbines generated the most heat, so that area is where most of the deterioration or peeling of the sound-deadening insulation would have occurred. (Ex. 4 at 25.)

Pray participated in this work in the doghouses, including vacuuming and cleaning up. (Ex. 4 at 118.) The millwrights were responsible for cleaning up in their area. (Ex. 4 at 118.) Pray had the same exposures to deteriorating sound-deadening insulation as the other millwrights working in the doghouses. (Ex. 4 at 118-119.)

Vernon Van Dolah (Van Dolah) also was a local 2158 millwright and worked several shutdowns with Pray. (Ex. 5 at 10-11.) Van Dolah also worked a shutdown at Byron in 1976. (Ex. 5 at 9.) He recalls the sound-deadening insulation as being sprayed on over the top of other

---

[1]CBS Corporation (a Delaware corporation f/k/a Viacom Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

insulation to deaden the sound. (Ex. 5 at 9-10.) Removing the doghouse would disturb the spray-on insulation.  (Ex. 5 at 102.)

William LaPointe (LaPointe) is a millwright and an expert on the asbestos content of materials used on turbine systems. (Ex. 6 at 2.) LaPointe described the deterioration and dust created by the sound deadening materials sprayed in the turbine enclosures:

> ...in Westinghouse's paperwork, installation paperwork and stuff, it says not to leave [sound deadening insulation] out to the elements. . . . moisture, will loosen this material, the sound deadening.  Moisture will make it separate from the iron.
> The one over the high pressure is the one that we had problems with because your two stop valves on the side of the turbine underneath -- were underneath this cover and as the package would loosen and the shafts would wear you get steam by-passage.  Of course, we took them apart from time to time and rebuilt them, but this steam would rise inside of that doghouse in the cover just like a sauna. It would rise and when it would hit the top of the cover what it would end up doing is it would start blistering, this sound deadening material. It would start blistering and it would start peeling like the paint on the outside of an old house. . . . They would them take a putty knife and scrape off that loose stuff there around wherever it was loose and peeled off.
> Stuff would, you know, peel off like paint on the outside of an old house and some of it would fall down. I'm sure it would have ended up laying on top of the turbines. That was hot and dry on top of the turbine.  That turbine running that, she was hot, the blankets -- the insulating blankets would -- when it would lay there it would dry back out, you know, and turn to dry material laying there, particulars, whatever, pieces.

(Ex. 7 at 29-31.)


III.     *Asbestos-Content of Sound-Deadening Insulation*

Westinghouse specifications for the Byron facility required that the spray-on insulation contain asbestos. The precise Westinghouse specification is number 600111 and is entitled "Sound Deadener Insulation to Enclosures." (Ex. 8.) This Specification states it "covers the spraying of sound deadening insulation on the interior surfaces of turbine enclosures . . . The insulation is to be applied by the manufacturer of the enclosure at his plant." (Ex. 8 at sec. A.)

The Specification designates the insulating material as 54521AC, and the compound contains "asbestos fibers." (Ex. 13.) Westinghouse corporate witness Doug Ware testified that this Specification applied to the Byron facility and that asbestos containing sound deadening insulation was used on the turbine enclosures at Byron. (Ex. 14 at 122-25.)

IV.     *Proximate Cause - Medical and Scientific Evidence*

Plaintiff's industrial hygiene expert is Stephen Kenoyer (Kenoyer). Based on the documents, information and literature available and his own qualifications and experience, Kenoyer determined Pray was exposed to significant airborne concentrations of asbestos from turbine maintenance work. (Ex. 9 at 5-6; Ex. 10 at 15-20.) Kenoyer's specific opinions in this case are based on the testimony of the two eyewitnesses (Crider and LaPointe) to the deterioration and dust from the sound deadening insulation. Kenoyer's opinions as to Pray's exposure to asbestos, which specifically include sound deadening insulation, are that "when the asbestos products were installed, removed, cut, manipulated, repaired, or in any way disturbed, Mr. Pray, while working with such products or as a bystander, was exposed to significant airborne concentrations of asbestos for each type of product." (Ex. 9 at 2, 5, 7.) In other words, there was asbestos in the dust created as a result of the deterioration of the sound deadening insulation and the turbine maintenance, and Pray was exposed to and breathed this dust.

Peter Orris, M.D. (Orris) is certified by the American Board of Preventative Medicine in Occupational Medicine. (Ex. 11.) Dr. Orris reviewed Pray's occupational exposure history and medical history. (Ex. 12.) Based upon the information available, Dr. Orris concludes that Pray's asbestos exposure was a cause of his lung cancer and subsequent death. (Ex. 12 at 3.)

ARGUMENT

I.   *All CBS's Arguments Except the "Bare Metal" Defense Should be Barred*

    A.   *CBS's Arguments Were Previously Adjudicated*

CBS's original motion for summary judgment in this case was filed with the MDL Court in the Eastern District of Pennsylvania on July 9, 2012. (Ex. 15.) The motion argued: (1) lack of evidence of exposure to asbestos-containing products CBS was liable for; and (2) the claim was barred by the exclusive remedy provision of the Illinois Worker's Compensation Act. (Ex. 15 at 5, 8, 12.) On December 17, 2012, Judge Eduardo Robreno (Robreno) issued an order denying CBS's Motion for Summary Judgment. (Ex. 16 at 1.) Robreno held that an issue of fact existed concerning exposure to asbestos-containing products from Westinghouse turbines, relying on his finding that Illinois law did not require a Plaintiff to meet the "frequency, regularity, and proximity"standard in cases with direct evidence:

> This Court notes that the rationale of the *Thacker* court would not apply where a plaintiff relied upon direct evidence, as there would be no danger of "guesswork" and little (if any) difficulty of proving contact. The Court therefore concludes, as it has previously, that *Thacker* indicates that the "frequency, regularity, and proximity" test is applicable in cases in which a plaintiff relies on circumstantial evidence. This is not inconsistent with the holding of *Lohrmann*.
> . . .
> There is evidence that Decedent was exposed not only to "flakes," but to respirable dust from a "spray-on" insulation/coating on the inside of Westinghouse turbines. (Doc. No. 143-6 at 22.) There is evidence that this insulation/coating contained asbestos.

(Ex. 16 at 5-6, 9.)

Robreno further held that CBS failed to meet its burden for an affirmative defense in its argument that the Worker's Compensation Act barred Pray's claim:

> Defendant argues that a reasonable jury could conclude that Decedent was an employee of Defendant Westinghouse based upon the testimony of another worker at the plant (who

was an employee of Defendant's) that he and the other men working with Decedent were employees of Defendant. However, the Court concludes that any such finding by a jury would be unduly speculative, as it is entirely possible that Decedent worked at the plant around Westinghouse employees but was not a Westinghouse employee himself. Therefore, Defendant has failed to carry its burden with respect to this affirmative defense.

(Ex. 16 at 9.)

The only ground on which the court gave CBS leave to refile was the "bare metal" defense:

> Defendant is only liable for this exposure if Illinois law does not recognize the so-called "bare metal defense." The Court has reviewed Illinois law on this issue and has determined that it has not been fully and squarely addressed by any appellate court in Illinois in the context of asbestos litigation. As such, there is no clear statement of Illinois law. . . . A court situated in Illinois is closer to and has more familiarity with - Illinois law and policy. As such, rather than predicting what the Supreme Court of Illinois would do, the Court deems it appropriate to remand this case for a court in Illinois to decide this issue.

(Ex. 16 at 9-10.)

This Court has consistently held that dispositive motions will be allowed "If, and only if, the defendants were granted leave by the MDL transferee court to refile dispositive motions in this court . . ." (*See* Ex. 17.) As outlined in Robreno's opinion above, the only issue Robreno granted CBS leave to refile was its "bare metal" defense." Consistent with the rulings of this Court and the MDL court, CBS's other arguments should be barred.

    B.    *CBS's Argument on the Illinois Statute of Repose is Untimely*

Even if the Court chooses to reconsider the aforementioned arguments originally offered by CBS, contrary to the ruling of the MDL court, it should not consider CBS's argument on the Illinois Statute of Repose. As discussed in section II A above, CBS did not raise this argument in

6

its original motion for summary judgment. (*See* Ex. 15.) The amended MDL scheduling order for this case required all dispositive motions to be filed by July 9, 2012. (Ex. 18 at 2, 4.) This Court has also held that no new dispositive motions are to be brought in these remanded cases. (*See* Ex. 17.) Therefore, CBS has waived the Statute of Repose defense, and it should not be considered by this Court.

II.     *Legal Standard For Summary Judgment*

"Summary judgment is a 'drastic remedy that prevents a claimant from presenting his cause of action to a jury of his peers. *Bushman v Halm,* 798 F.2d 651, 656 (3d Cir. 1986). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson y Liberty Lobby. Inc.*, 477 U.S. 242, 247-248 (1986). A fact is "material" if proof of its existence or non-existence might affect the outcome of the ligation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

This court views the facts in the light most favorable to the non-moving party, who is the plaintiff herein. "All inferences must be viewed in the light most favorable to the nonmoving party, . . [and] the court must construe facts and draws inferences in favor of the party against whom the motion under consideration is made." *J.S. ex rel. Snyder v Blue Mountain School Dist.* 650 F.3d 915, 925 (3d Cir. 2011). "After making all reasonable inferences in the nonmoving

party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v Moessner*, 121 F.3d 895, 900 (3d Cir. 1997). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there a genuine issue for trial." *Anderson,* 477 U.S. at 250.

III.     *Product Identification/Causation Under Illinois Law*

The MDL court's rulings on defense motions for summary judgment in previous CVLO cases discuss Illinois law regarding proximate cause in asbestos cases. This analysis is summarized below and is taken from this court's rulings in *Goeken v Arands,* MDL 875 case number 10-68122, document number 197, issued April 4, 2012, and *Krik v BP America,* MDL 875 case number 11-63473, document number 327, issued May 16, 2012.

"Ordinarily a jury must determine the issue of proximate cause." *Hollinger v Wagner Min. Equipment Co.,* 667 F.2d 402, 406 (3rd Cir. 1981). In order to establish causation for an asbestos claim under Illinois law, a plaintiff must show that the defendant's asbestos was a "cause" of the illness. *Thacker v. UNR Industries, Inc.,* 151 Ill.2d 343, 354 (Ill. 1992). In negligence actions and strict liability cases, causation requires proof of both "cause in fact" and "legal cause." *Id.* "To prove causation in fact, the plaintiff must prove medical causation, i.e., that exposure to asbestos caused the injury, and that it was the defendant's asbestos-containing product which caused the injury." *Zickhur v. Ericsson, Inc.,* 2011 IL App (1st) 103430 at ¶ 36, 962 N.E.2d 974, 983 (Ill. App. 1st Dist. 2011) (citing *Thacker*, 151 Ill.2d at 354).

Illinois courts employ the "substantial factor" test in deciding whether a defendant's conduct was a cause of a plaintiff's harm. *Nolan v. Weil-McLain,* 233 Ill. 2d 416, 431 (Ill. 2009) (citing *Thacker*, 151 Ill. 2d at 354-55). Proof may be made by either direct or circumstantial evidence. *Thacker*, 151 Ill. 2d at 357. "While circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient." *Thacker*, 151 Ill.2d at 354. In cases of direct evidence of asbestos exposure, the frequency, regularity, and proximity test does not apply. As the MDL court stated in *Goeken,* "plaintiff is relying on direct evidence (rather than circumstantial evidence) to establish causation. Therefore, he need not satisfy the 'frequency, regularity, and proximity' test" of *Thacker*. In *Krik* the MDL court rejected the defense contention that recent decisions of the Illinois Supreme Court and appellate court had applied this test to cases of direct evidence of exposure. The court stated "because Plaintiff is relying on direct, rather than circumstantial evidence, he need not satisfy the *Lohrmann* 'frequency, regularity, and proximity test.'"

IV.    *Questions of Fact Exist Regarding Proximate Cause*

The Westinghouse specifications for the turbines at the Byron facility required the use of asbestos in the sound deadening insulation. (Ex. 8; Ex. 13.) Westinghouse corporate representative Doug Ware testified that asbestos containing sound deadening insulation was used on the turbine enclosures at Byron. (Ex. 14 at 122-25.) The Specification and Ware's deposition testimony are inconsistent with Ware's self-serving declaration submitted with Westinghouse's motion that the thermal systems insulation at the Byron facility was asbestos free. "On a Rule 56 motion for summary judgment it [the court] must view the evidence in the light most favorable to

the non-moving party and, if there are disputes over genuine issues of material fact, they are for the jury to resolve," *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003). The conflict in the evidence regarding the asbestos content of the sound deadening insulation is for the jury to resolve.

Further, the order in *Krik v BP America,* MDL 875 case number 11-63473, docket number 327, issued May 16, 2012, the MDL court cited an Illinois appellate court case for the proposition "a defendant cannot obtain summary judgment by presenting testimony of a corporate representative that conflicts with a plaintiff's evidence pertaining to product identification - [with the Illinois case, *Zickhur v. Ericsson, Inc.,* 962 N.E.2d 974, 985-86 (Ill. App. 1st Dist. 2011)] specifically holding it is the province of the jury to assess the credibility of witnesses and weigh conflicting evidence."  The court's rationale in *Krik* applies here.  CBS cannot obtain summary judgment by submitting a self-serving affidavit executed in 2012 that conflicts with Westinghouse's contemporaneous specifications and Ware's prior deposition testimony that asbestos containing sound deadening insulation was to be applied to the turbine enclosures.

Questions of fact also exist regarding whether Pray's exposure to the asbestos contained in the sound deadening insulation was a substantial cause of his cancer. As discussed above, two witnesses described the deterioration of sound deadening insulation and the dust produced when the deteriorated insulation was disturbed by removal of the hood and cleanup during turbine maintenance. The witness testimony also establishes that Pray was present during this maintenance and was exposed to the dust. This is direct evidence of Pray's exposure and as such is not subject to the frequency, regularity and proximity standard.  The MDL court recognized in

*Wright v. A.W. Chesterton, et. al*, E.D. PA 2:11-CV-66748-ER, document number 245 filed 4/06/12 at 5, that bystander exposures proven by direct evidence create a genuine issue of material fact. That same rationale applies here. There was asbestos in the dust created as a result of the deterioration of the sound deadening insulation and the turbine maintenance, and Pray was exposed to and breathed this dust.

The existence of these issues of material facts renders moot CBS's assertion that "evidence showing exposure to asbestos-containing materials associated with Westinghouse equipment is insufficient to raise a genuine issue of fact as to Westinghouse-specific causation unless the evidence further shows that such asbestos-containing materials were actually supplied by Westinghouse rather than being furnished and installed by third-parties." (Ex. 15 at 8.) This is the so-called bare metal defense, which defendants usually invoke to disclaim liability for asbestos products they neither supplied nor manufactured. However, in this case Westinghouse's own documents and Ware's deposition testimony indicate Westinghouse or a vendor hired by Westinghouse applied the asbestos containing sound deadening insulation to the enclosure before the turbine was shipped from Westinghouse's manufacturing facilities pursuant to Westinghouse's material specifications. When construed in plaintiff's favor, as is required in deciding CBS's motion, this evidence suggests Pray was exposed to a piece of equipment sold by Westinghouse. As a result the bare metal defense does not apply to this case.

V.    *The Workers Compensation Act Does Not Apply*

"The Workers' Compensation Act provided an employer only with an affirmative defense against an employee's tort action." *Equistar Chemicals, L.P. v. BMW Constructors, Inc.,* 353 Ill.

App. 3d 593, 817 N.E.2d 534, 541 (Ill. App. 3rd Dist. 2004). CBS thus bears the burden of proving Pray was its employee. "The burden of establishing a statute-of-limitations defense is on the party asserting it." *Litchfield Community Unit School Dist. No. 12 v. Specialty Waste Services, Inc.,* 325 Ill. App. 3d 164, 168, 757 N.E.2d 641, 644 (5th Dist. 2001).

CBS relies on the testimony of Robert Crider to assert Pray was Westinghouse's employee. However, Crider never testified Pray was a Westinghouse employee:

> Q. So do you believe that Mr. Schurtz, yourself, and Mr. Carlson were employees of Westinghouse at the Byron job?
>
> A. Yes.
>
> Q. Okay. And do you believe the checks that were cut to you, did they come from Westinghouse, do you know?
>
> A. I don't remember, but Westinghouse's people had full jurisdiction over what we did.

(Ex. 15 at 39-40.)

"All inferences must be viewed in the light most favorable to the nonmoving party, . . . [and] the court must construe facts and draws inferences in favor of the party against whom the motion under consideration is made" *J.S. ex rel. Snyder v Blue Mountain School Dist.* 650 F.3d 915, 925 (3d Cir. 2011). Crider did not testify that Pray was a Westinghouse employee, and therefore CBS has failed to carry its burden of proving Pray was its employee. CBS therefore has failed to show the Illinois Workers Compensation Act applies.

VI.    *Illinois does not Recognize the "Bare Metal" Defense*

The Illinois appellate courts allow recovery against equipment manufacturers or suppliers for injuries caused by replacement component parts manufactured by a third party. In so doing, Illinois courts reject the rationale of the bare metal defense, which is that an equipment supplier is not liable for injuries caused by the products of a third party. Instead, Illinois appellate courts focus on whether modification is foreseeable.

In *Brdar v. Cottrell*, the plaintiff was injured when the chain component of a chain and ratchet system for a cargo trailer broke. 867 N.E.2d 1085 (Ill. App. 2007). The plaintiff bought a replacement chain from a third party and claimed the chain broke because the ratchet system applied excessive force to the chain. The case ultimately went to trial before a jury. The defendant requested an instruction that the third party manufacturer of the chain should be considered the sole proximate cause of the plaintiff's injury. The trial court denied the instruction and the appellate court affirmed, stating:

> Cottrell [the defendant manufacturer of the chain and ratchet system] *expected* that its customers would need to replace chains and anticipated that they would purchase replacement chains from suppliers other than Cottrell or Columbus McKinnon. In a products liability case, the manufacturer remains liable if the product is modified in a manner that is foreseeable after it leaves the manufacturer's control.

*Brdar,* 372 Ill. App. 3d at 705, 867 N.E.2d at 1099 (emphasis in original) *See also Malen v. MTD Prods.*, 628 F.3d 296, 304 (7th Cir. 2010).

The *Brdar* court relied on another Illinois appellate district court decision where the court stated: ". . . Midwest [the manufacturer] would remain liable to the plaintiff if a defect in the equipment [an asphalt silo] contributed to the injury or if Dunn's [the employer] modification or

13

misuse was foreseeable by Midwest." *Owens v. Midwest Tank and Manufacturing Company*, 192 Ill. App. 3d 1039, 1044-45 (Ill. App. 1989).

The specifications for CBS turbines at Byron required the use of asbestos in the sound deadening insulation. CBS's motion does not contend it was unaware of the dangers of asbestos. It was therefore foreseeable to CBS that the insulation would be removed during maintenance and replaced with additional asbestos insulation. Based on *Brdar,* CBS's failure to warn of the dangers of asbestos is a proximate cause of Pray's lung cancer.

VII.    *The Illinois Construction Statute of Repose Does Not Bar The Claims*

Even if this Court rules on the merits of CBS's untimely argument, the Illinois CSOR does not apply to ordinary repair and maintenance. "The express language of the statute of repose does not protect Granite City against the negligent maintenance or negligent operation of the sewer system or lift station after their construction." *Trtanj v. City of Granite City,* 379 Ill. App. 3d 795, 802, 884 N.E.2d 741, 747 (5th Dist. 2008). *See also Morietta v. Reese Const. Co.,* 347 Ill. App. 3d 1077, 808 N.E.2d 1046, 1050 (5th Dist. 2004) (in considering the scope of the CSOR, appellate court states "however, an improvement is more than mere repair or replacement"); *Merritt v. Randall Painting Co.*, 314 Ill. App. 3d 556, 561 (1st Dist. 2000) ("An improvement to real property is an addition which amounts to more than a mere repair or replacement and which substantially enhances the value of the property. It does not include ordinary maintenance"). Pray only worked at the Byron site during shutdowns and other routine repair and maintenance. The Illinois CSOR does not apply to this work.

CONCLUSION

For the foregoing reasons, the court should deny the motion for summary judgment filed by defendant Westinghouse.

Dated: February 14, 2014

/s/ Robert G. McCoy

Attorney for plaintiff
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607-5308
tel: 312-944-0600
fax: 312-944-1870
e-mail: bmccoy@cvlo.com