UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BETTY McSWEENEY, Individually and )
as Special Administrator for the )
estate of FRANKIE D. PRAY, SR., )
    )
      Plaintiff, )  96-4025
    )
  v. )
    )
A C & S, INC., *et al.*, )
    )
      Defendants. )

ORDER

    This case was remanded by the Judicial Panel on Multidistrict Litigation. Pursuant to the suggestion of remand, the remaining defendants were CBS Corporation,[1] General Electric Company ("GE") and General Refractories, Inc. A trial was scheduled to begin on February 10, 2014. GE filed a motion for summary judgment [119] on January 21, 2014. The court vacated the trial setting to allow time for briefing and the court's ruling.

    There are now four motions pending. In addition to the motion for summary judgment, GE has filed two motions in *limine* to exclude testimony of the plaintiff's experts, Dr. Peter Orris and Stephen Kenoyer [120, 121]. The plaintiff has filed a motion for sanctions [115] requesting a jury instruction to permit, but not require, an inference that certain contracts, which GE was unable to locate, would have contained information unfavorable to GE.

FACTS

    Frankie D. Pray was a millwright and a member of union Local 2158, which includes in its territory a number of counties in Iowa and Illinois. Local 2158 referred its millwrights to contractors and employers for projects.

    In 1968, Local 2158 sent Pray and other millwrights to Cordova, Illinois, to work on the nuclear reactor, GE turbines, valves, pumping stations, and floodgates at the Quad Cities Nuclear Power Plant ("QC"), then under construction for Commonwealth Edison. Local 2158's business manager, Robert Crider, recalled that he sent ninety or more millwrights to work during the construction phase of QC. At any given time, 25 to 40 millwrights would work on turbine installation. Crider says that Pray left QC in 1969 or 1970 to work on another nuclear power plant in Palo, Iowa. Construction of the QC turbines was completed no later than 1973. At one or more points, Pray returned to QC to assist with overhaul of the turbines. The parties do not state exactly when the decedent last worked during an overhaul at QC.

---

[1] CBS was voluntarily dismissed with prejudice on May 22, 2014.

Pray commenced his case in 1996.  He died in 2007 at age 72 from respiratory failure and lung cancer.

## ANALYSIS

GE filed a motion for summary judgment in the transferor court.  The motion was denied with leave to refile the motion in this court.

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Any discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

GE argues that the plaintiff's claims are untimely under Illinois law.  The Illinois Construction Statute of Repose ("CSOR"), 735 ILCS 5/13-214(b), states, in pertinent part,

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

When the CSOR defense is raised on summary judgment, the defendant has the burden to produce "sufficient evidence which would entitle it to judgment as a matter of law."  *Ocasek v. City of Chicago*, 656 N.E.2d 44, 47 (Ill. App. Ct. 1995).  The defendant must show that conduct (1) involved construction, or construction of an improvement, to real property, and (2) the defendant's conduct falls within the statute's enumerated activities – design, planning, supervision, etc.  *Illinois Masonic Med. Ctr. v. A C & S, Inc.*, 640 N.E.2d 31, 34 (Ill. App. Ct. 1994) (citing *St. Louis v. Rockwell Graphic Sys., Inc.*, 605 N.E.2d 555 (Ill. 1992)).  If the defendant meets its burden, the plaintiff must show that the CSOR defense rests on a genuine issue of fact.  *Ocasek*, 656 N.E.2d at 47.

### "Construction to real property"

There is no question that the installation of the turbines during construction of the QC powerhouse meets the "construction" requirement.  The question is whether GE engaged in an enumerated activity during the initial construction.

The plaintiff argues that the CSOR does not apply to this situation because GE designed and/or manufactured the turbines but did not install them, citing *Illinois Masonic*, 640 N.E.2d 31.

In *Illinois Masonic*, a medical center contracted for the construction of buildings using products placed into the stream of commerce, including floor tile, pipe covering, ceiling tile, block insulation and insulating cement, and joint compound tape, among other ordinary construction products. *Illinois Masonic*, 640 N.E.2d at 32 n.1. More than twenty years later, the medical center sued the manufacturers of products containing asbestos. *Illinois Masonic*, 640 N.E.2d at 32. The court ruled that for a manufacturer to benefit from the CSOR, it must have performed "some role related to the construction site beyond furnishing standard products generally available to the public." *Illinois Masonic*, 640 N.E.2d at 35. GE states, and the plaintiff does not dispute, that the two turbines were designed and built specifically for QC. The plaintiff's additional fact #4 states that during the time QC was being constructed, GE engineers and representatives were onsite, and GE "called the shots." Thus, *Illinois Masonic* does not support the plaintiff's argument.

The plaintiff also cites *State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Co.-Conn.*, 24 F.3d 955 (7th Cir. 1994). This case, too, is factually inapposite. In *State Farm*, the defendant manufactured fireproofing material and sold it in 50-pound bags to construction companies. *State Farm*, 24 F.3d at 956. The plaintiff's architect did not specify the brand to be used, but the defendant's fireproofing product was a prominent brand. *State Farm*, 24 F.3d at 956. The court ruled that the manufacture of a building product was too remote from building construction, or construction of an improvement, to benefit from the CSOR; otherwise, the statute would "embrace every supplier of building materials." *State Farm*, 24 F.3d at 957. In the instant case, GE did not produce turbines for various applications; it produced two specific turbines designed for a particular location.

GE custom-designed the two turbines for the QC facility and supervised the construction of the turbines onsite during initial construction of the powerhouse. GE engaged in activities enumerated in the CSOR. The CSOR applies to injuries sustained during the initial construction of the turbines.

### "Construction of an improvement to real property"

The plaintiff also argues that the decedent was injured when he worked at QC during turbine overhauls. The plaintiff asserts that the CSOR does not apply to injuries sustained during turbine overhauls, because the overhauls are repairs/maintenance and not "improvements to real property." Overhauls involve dismantling the turbine, removing and replacing insulation, gaskets, etc., and removing, replacing, resizing and reconfiguring miles of pipe, involving people in multiple trades, directed by engineers who work for the turbine manufacturer.[2] The plaintiff's

---

[2] The court takes judicial notice of the direct examination of plaintiff's experts, William Joseph LaPointe and Joseph Ferriter, at the January 2014 trial in *Kinser v. CBS Corp.*, 94-2282 (C.D. Ill.). LaPointe and Ferriter are plaintiff's experts in the instant case. *See* d/e 133-7, 133-8; 133-15. Their testimony in *Kinser* was transcribed and docketed on April 2, 2014, several months after GE filed its motion for summary judgment. *See Kinser*, 94-2282, d/e 170, d/e 174 (C.D. Ill.). In *Kinser*, the plaintiff elicited testimony from LaPointe and Ferriter describing the

additional material fact #3 states that Pray generally worked for five to eight weeks at each shutdown, which is itself an indication of the extensive work performed during an overhaul. However extensive it may be, the plaintiff contends that it is merely repair and maintenance.

"Although grounded in fact, the question of whether something constitutes an 'improvement to real property' is one of law." *Merritt v. Randall Painting Co.*, 732 N.E.2d 116, 119 (Ill. App. Ct. 2000) (citing *Rockwell Graphic*, 605 N.E.2d 555). "Relevant criteria for determining what constitutes an 'improvement to real property' include: whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced." *Rockwell Graphic*, 605 N.E.2d at 556. In this case, the testimony of plaintiff's experts LaPointe and Ferriter leads to the conclusion that the resized and reconfigured pipes installed during an overhaul are an integral component enhancing the functioning of the turbine and the power plant.

The plaintiff cites a number of cases for the broad proposition that routine maintenance is not considered an improvement under the CSOR. Each case is factually distinct. In *Trtanj v. City of Granite City*, 884 N.E.2d 741 (Ill. App. Ct. 2008), a power outage during a rainstorm caused sewer lift stations to become inoperable, and city workers hurried to get bypass pumps set up at the lift stations. *Trtanj*, 884 N.E.2d at 743-44. The plaintiffs were directly upstream from the last lift station to be fitted with a bypass pump; sewage backed up into their home. *Trtanj*, 884 N.E.2d at 744. The court held that the city had not engaged in "design, planning, supervision, observation or management of construction, or construction.' . . . [O]nly the enumerated construction activities fall within the statute's protection." *Trtanj*, 884 N.E.2d at 748 (citing *State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Co.*, 834 F. Supp 1052, 1058 (C.D. Ill. 1993)). *Trtanj* is inapposite; city employees did not engage in "construction of an improvement;" they installed a temporary measure to be used until power was restored.

In *Morietta v. Reese Const. Co.*, 808 N.E.2d 1046 (Ill. App. Ct. 2004), a motorist sued a road paving company after hydroplaning on standing road water and losing control of his car. *Morietta*, 808 N.E.2d at 1048. A paving company had removed and repaved the stretch of road where the motorist lost control, and the motorist alleged that the road did not drain water properly. *Morietta*, 808 N.E.2d at 1048. The court determined that the removal/repavement was not an "improvement to real property" because the contractor

> removed and replaced an existing road. It did not build a new road or even widen the existing road. . . . [R]epaving the road involved using the same depth of material as the existing road and following the slope of the existing road. The project also involved patching the pavement. This work neither improved the value of the

---

overhaul process. There can be no genuine dispute that a turbine overhaul at a powerhouse is a more extensive process than routine repair and maintenance.

property nor enhanced the use of the property.

*Morietta*, 808 N.E.2d at 1050. Consequently, the CSOR did not apply. *Morietta*, 808 N.E.2d at 1050. *Morietta* is also distinguishable from the instant case; the removal/replacement of the road did not change any aspect of the road, enhance its use, or increase its value.

In *Merritt*, the plaintiff sued a painting contractor after she was injured by a window screen improperly secured after repainting. *Merritt*, 732 N.E.2d at 117. The plaintiff alleged that the contractor "agreed to scrape, plaster, patch, clean and paint the entire interior . . ., and move all moveable objects, . . . in performing such work." *Merritt*, 732 N.E.2d at 117. The court had "no difficulty" finding that the work was ordinary repair and maintenance. *Merritt*, 732 N.E.2d at 119. *Merritt* is distinguishable as well; a reasonable juror knows from experience that surfaces must be repainted as a matter of routine – often, do-it-yourself – maintenance. *Merritt*, 732 N.E.2d at 119.

The defendant argues that *if* the decedent was exposed to asbestos during the overhauls, the claim arises out of an act or omission (the specified use of certain component parts) rooted in the design, planning, and construction of the original turbine. Therefore, the CSOR applies. GE has not cited any authority in support of its argument. However, there are a few factually similar cases in other states.

In *Harder v. AC&S, Inc.*, 11 F. Supp. 2d 1055 (N.D. Iowa 1998), the plaintiff utility worker performed general maintenance and overhaul work on GE steam turbines at various Iowa power plants. *Harder*, 11 F. Supp. 2d at 1057. The overhauls began with the removal of thermal asbestos insulation blankets from the turbines. *Harder*, 11 F. Supp. 2d at 1057. GE raised the statute of repose defense. The Iowa statute of repose provided, in pertinent part,

> **Improvements to real property.** In addition to limitations contained elsewhere in this section, an action arising out of the unsafe or defective condition of an improvement to real property based on tort and implied warranty and for contribution and indemnity, and founded on injury to property, real or personal, or injury to the person or wrongful death, shall not be brought more than fifteen years after the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of injury or death.

Iowa Code § 614.1(11). "The Iowa Supreme Court has 'characterized this as a statute of repose, which closes the door after fifteen years on certain claims arising from improvements to real property.'" *Harder*, 11 F. Supp. 2d at 1058 (quoting *Krull v. Thermogas Co.*, 522 N.W.2d 607, 611 (Iowa 1994)). The district court concluded that the turbines were improvements to real property. *Harder*, 11 F. Supp. 2d at 1062. The district court also decided that the detachable turbine insulation blankets could not be considered improvements to real property. *Harder*, 11 F. Supp. 2d at 1065. On appeal, the Eighth Circuit reversed. *Harder v. AC&S, Inc.,*, 179 F.3d 609, 611-13 (8th Cir. 1999). The Eighth Circuit ruled that once the blankets were placed on the turbines, they became improvements to real property and did not lose their character by virtue of

5

temporary removal and replacement during overhauls. *Harder*, 179 F.3d at 611-13.

In *Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 390 (Pa. Super. Ct. 2011), the decedent worked at a powerhouse during repairs and overhauls to GE turbines, during which he was allegedly exposed to asbestos. *Rabatin,* 24 A.3d at 390, 393. GE employees supervised and directed the repairs and overhauls. *Rabatin*, 24 A.3d at 392-93. GE raised the statute of repose in defense. The Pennsylvania statute states, in pertinent part:

### § 5536. Construction projects

(a) General rule.—[A] civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for: (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement. (2) Injury to property, real or personal, arising out of any such deficiency. (3) Injury to the person or for wrongful death arising out of any such deficiency.

42 Pa. Cons. Stat. Ann. § 5536.

The plaintiff in *Rabatin* argued that the statute of repose did not apply because the asbestos components were not improvements to real property. *Rabatin,* 24 A.3d at 393-94. The court stated, "GE is entitled to the protections of section 5536 based upon its design and construction of the finished product – the turbine itself." *Rabatin*, 24 A.3d at 394.

*Harder* and *Rabatin* are persuasive. Both cases involved injuries resulting from exposure to asbestos during overhauls to GE turbines. And in both cases, recovery was barred pursuant to state statutes of repose substantially similar to Illinois' CSOR. The court agrees with the reasoning in *Harder* and *Rabatin*. Essential components of the turbine are improvements to real property even if components are later removed and replaced, and statutory protection arising from the design and initial construction of the turbine extends to injury sustained during overhauls and outages.

In this case, the design and construction of the QC turbines were complete by 1973. Pray's subsequent turbine work at QC during outages and shutdowns relates back to the original design and construction. Pray did not file his lawsuit until 1996. His claims are barred by the Illinois CSOR.

## CONCLUSION

GE's motion for summary judgment [119] is granted. The plaintiff's motion for sanctions [115], and GE's motions to exclude expert testimony of Dr. Peter Orris and Stephen Kenoyer [120, 121] are moot. The clerk is directed to incorporate judgment in favor of GE in the final judgment in the case. The sole remaining defendant in this case is General Refractories,

Inc. A status conference is scheduled for July 1, 2014, at 8:45 a.m. by telephone conference call. The court will initiate the call. The final pretrial conference and jury selection/trial settings will be determined at the status conference.

    Entered this 18th day of June, 2014.

                                        **/s/Harold A. Baker**
                              HAROLD A. BAKER
                        UNITED STATES DISTRICT JUDGE